No. 12-2673

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
_____

AUTOCAM CORPORATION; AUTOCAM MEDICAL, LLC; JOHN
KENNEDY; PAUL KENNEDY; JOHN KENNEDY, IV; MARGARET
KENNEDY; THOMAS KENNEDY
*Plaintiffs – Appellants*

v.

KATHLEEN SEBELIUS, Secretary of the United States Department of Health and
Human Services; UNITED STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES; HILDA L. SOLIS, names as Hilda Solis; Secretary of the
United States Department of Labor; UNITED STATES DEPARTMENT OF
LABOR; TIMOTHY GEITHNER, Secretary of the United States Department
*Defendants – Appellees*

On Appeal from the United States District Court
for the Western District of Michigan
Case No. 1:12-CV-1096
Hon. Robert J. Jonker
_____

## APPELLANTS' PRINCIPAL BRIEF

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AUTOCAM CORPORATION, et al.

        Plaintiff(s),

Case No.   1:12-cv-01096

v.

Hon. Robert J. Jonker

KATHLEEN SEBELIUS, et al.

        Defendant(s).

_____/

### DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to Federal Rule of Civil Procedure 7.1,

Autocam Medical, LLC
(Party Name)

makes the following disclosure:

1. Is party a publicly held corporation or other publicly held entity? ☐ Yes ☑ No

2. Does party have any parent corporations? ☑ Yes ☐ No
   If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

   Autocam Medical Device Holdings, LLC is the parent company of party
   Autocam Medical, LLC (full name Autocam Medical Devices, LLC)

3. Is 10% or more of the stock of party owned by a publicly held corporation or other publicly held entity? ☐ Yes ☑ No
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐ Yes ☑ No
   If yes, identify entity and nature of interest:

Date: _____10/9/2012_____

/s/ Jason C. Miller
(Signature)
Jason C. Miller (P#76236)
MILLER JOHNSON
Attorneys for Plaintiffs
250 Monroe Avenue, N.W., Suite 800
Grand Rapids, Michigan 49503
(616) 831-1700 millerj@millerjohnson.com

WDMI Corporate Disclosure Statement pursuant to Fed. R. Civ. P. 7.1 or Fed. R. Crim. P. 12.4 (4/06)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

AUTOCAM CORPORATION, et al.

Plaintiff(s),                    Case No.  1:12-cv-01096

v.

Hon. Robert J. Jonker

KATHLEEN SEBELIUS, et al.

Defendant(s).

_____/

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

Pursuant to Federal Rule of Civil Procedure 7.1,          **Autocam Corporation**
                                                          _____
                                                                  (Party Name)
makes the following disclosure:

1. Is party a publicly held corporation or other publicly held entity? ☐ Yes ☑ No

2. Does party have any parent corporations? ☐ Yes ☑ No
   If yes, identify all parent corporations, including grandparent and great-grandparent
   corporations:

   No

3. Is 10% or more of the stock of party owned by a publicly held corporation or other
   publicly held entity? ☐ Yes ☑ No
   If yes, identify all such owners:

   No

4. Is there any other publicly held corporation or other publicly held entity that has a direct
   financial interest in the outcome of the litigation? ☐ Yes ☑ No
   If yes, identify entity and nature of interest:

Date: _____10/9/2012_____          /s/ Jason C. Miller
                                                   _____
                                                              (Signature)
                                                   Jason C. Miller (P#76236)
                                                   MILLER JOHNSON
                                                   Attorneys for Plaintiffs
                                                   250 Monroe Avenue, N.W., Suite 800
                                                   Grand Rapids, Michigan 49503
                                                   (616) 831-1700  millerj@millerjohnson.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT .......................................... 1

JURISDICTIONAL STATEMENT ............................................... 2

SUMMARY OF ARGUMENT ............................................................. 8

ARGUMENT ..................................................................................... 10

I.      Standard of Review ........................................................................ 10

II.      The District Court Erred in Refusing to Grant a Preliminary
Injunction. .................................................................................... 11

     A.      Standard for granting a preliminary injunction .................................. 11

     B.      The Plaintiffs have established a likelihood of success under the
Religious Freedom Restoration Act. ................................................... 11

         1.      The Religious Freedom Restoration Act protects the
Plaintiffs' exercise of religion in operating their business. ...... 13

         2.      The HHS Mandate burdens the Plaintiffs' exercise of
religion. .......................................................................... 13

         3.      The exception-riddled HHS Mandate is not justified by a
compelling interest ............................................................ 24

         4.      The HHS Mandate is not the least restrictive means. ............... 28

     C.      The violation of the Plaintiffs' religious freedom constitutes
irreparable harm. ........................................................................... 30

         1.      By demonstrating an RFRA violation, the Plaintiffs
showed irreparable harm. ................................................... 30

         2.      The district court's other conclusions on irreparable harm
are baseless. .................................................................... 30

i

D.    The Federal Government will not be injured by an injunction because the HHS Mandate is already subject to exceptions and has been enjoined in most courts..........................................................35

E.    The public interest would be served by protecting the Plaintiffs' religious freedom..............................................................................35

CONCLUSION .............................................................................................36

CERTIFICATE OF COMPLIANCE......................................................37

CERTIFICATE OF SERVICE ...............................................................38

DESIGNATION OF RELEVENT DISTRICT COURT DOCUMENTS ...............39

## TABLE OF AUTHORITIES

**Cases**

*Am. Pulverizer Co. v. U.S. Dep't of Health & Human Servs.*, No. 12-cv-3459, 2012 WL 6951316 (W.D. Mo. Dec. 20, 2012)....................................13

*Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668 (1996).......................................22

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010) ...............................................23

*Braunfield v. Brown*, 366 U.S. 5699 (1961) .............................................................21

*Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729 (2011) ................................. 27, 28

*Certified Restoration Dry Cleaning v. Tenke Corp.*, 511 F. 3d 535 (6th Cir. 2007) ...............................................................................................................10

*Church of the Lukumi Babalu Aye, **Inc**. v. City of Hialeah*, 508 U.S. 520 (1993)...........................................................................................................24

*Citizens United v. Fed Election Comm'n,* 558 U.S. 310; 130 S.Ct. 876 (2010).............................................................................................................25

*Conestoga Wood Specialties Corp. v. Sebelius*, No. 12-cv-6744, 2013 WL 140110 (E.D. Pa. Jan. 11, 2013)....................................................................14

*Connection Distrib. Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998)..............................39

*Dolan v. City of Tigard*, 512 U.S. 374 (1994) .........................................................22

*EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610 (9th Cir. 1988) .....................23

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006)............................................................................... 19, 27, 28, 32

*Grote v. Sebelius*, No. 13-1077, 2013 WL 362725 (7th Cir. Jan. 30, 2013) .............................................................................................................12

*Hobby Lobby v. Sebelius,* No. 12-6294 (10th Cir. Dec. 20, 2012).........................13

*Jolly v. Coughlin,* 76 F.3d 468 (2d Cir. 1996) .........................................................33

*Korte v. Sebelius*, No. 12-3841, 2012 WL 6757353 (7th Cir. Dec. 28, 2012) ..................................................................................................12

*Legatus v. Sebelius*, No. 12-cv-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012) ...................................................................................13

*McPherson v. Michigan High School Athletic Ass'n*, 119 F. 3d 453 (6th Cir. 1997)...................................................................................10

*Mirdrash Sephardi, **Inc.** v. Town of Surfside*, 367 F.3d 1214 (11th Cir. 2004) ..........................................................................................25

*Monaghan v. Sebelius*, No. 12-cv-15488, 2012 WL 6738476 (E.D. Mich. Dec. 30, 2012) ...............................................................13

*N.E. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006) ..........................................................................................11

*NAACP v. Button*, 371 U.S. 415 (1963)....................................................23

*Newland v. Sebelius*, No. 1:12-cv-1123, 2012 WL 3069154 (D. Colo. July 27, 2012).......................................................................... 13, 30, 31

*O'Brien v. U.S. Dep't of Health & Human Servs.*, No. 12-3357 (8th Cir. Nov. 28, 2012) .....................................................................12

*Okleveuha Native American Church of Hawaii, **Inc.** v. Holder*, 676 F.3d 829 (9th Cir. 2012) ...........................................................25

*Sharpe Holdings, Inc. v. U.S. Dep't of Health and Human Servs.*, No. 2:12-cv-92 (E.D. Mo. Dec. 31, 2012).........................................13

*Sherbert v. Verner,* 374 U.S. 398 (1963) ......................................... 16, 19

*Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393 (6th Cir. 1997) .........................................................................................11

*Storman's, Inc. v. Selecky,* 586 F.3d 1109 (9th Cir. 2009)......................23

*Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003).........................34

*Thinket Ink. v. Sun Microsystems, Inc.*, 368 F. 3d 1053 (9th Cir. 2004) .................24

*Thomas v. Collins*, 323 U.S. 516 (1945).................................................25

*Thomas v. Review Bd. Of Ind. Empt' Sec Div.,* 450 U.S. 707 (1981)............... 16, 19

*Triune Health Group, Inc. v. U.S. Dep't of Health & Human Servs.,*
No. 12-cv-6756 (N.D. Ill. Jan. 3, 2013).................................................12

*Turner Broad. Sys. Inc. v. FCC,* 512 U.S. 622 (1994) ............................................27

*Tyndale House Publishers, Inc. v. Sebelius,* No. 12-cv-1635, 2012 WL
5817323 (D.D.C. Nov. 16, 2012) .......................................................... 13, 35

*United States v. Lee,* 455 U.S. 252  (1982)...................................................... 20, 21

*United States v. Playboy Ent'mt Group, Inc,* 529 U.S. 803 (2000)................. 28, 32

*United States v. Wilgus,* 638 F.3d 1274 (10th Cir. 2011).......................................32

*Wheaton College v. Sebelius,* --- F.3d ----, 2012 WL 6652505 (D.C.
Cir. Dec. 18, 2012)...............................................................................17

*White Mountain Apache Tribe v. Williams,* 810 F.2d 844 (9th Cir.
1984) .....................................................................................................24

*Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008)......................................34

*Wisconsin v. Yoder,* 406 U.S. 205 (1972)................................................................16

**Statutes**

1 U.S.C. § 1 ..............................................................................................................21

26 U.S.C. § 4980D ..................................................................................................14

26 U.S.C. § 4980H ..................................................................................................32

26 U.S.C. § 4980H(c)(2)(B)(i)................................................................................26

26 U.S.C. § 5000A(d)(2)(A)(i) ...............................................................................25

26 U.S.C. § 5000A(d)(2)(A)(ii) ..............................................................................25

28 U.S.C. § 1292(a)(1).............................................................................................2

42 U.S.C. § 18011(a)(2)...........................................................................................26

42 U.S.C. § 2000bb-1 ........................................................................................ 13, 21

42 U.S.C. § 2000bb–1(c) ..................................................................2

42 U.S.C. § 2000cc-5(7)(A) ..........................................................13

42 U.S.C. § 300gg-13 ......................................................................4

MCL 450.1251 ................................................................................23

MCL 450.4201 ................................................................................23

Pub. L. 111-148 ..............................................................................4

Pub. L. 111-152 ..............................................................................4

**Other Authorities**

Durham & Smith, 1 Religious Organizations and the Law § 3:44
(2012) ..........................................................................................22

**Regulations**

26 C.F.R. § 54.9815-1251T ............................................................26

29 C.F.R. § 2590.715-1251 ............................................................26

45 C.F.R. § 147.130 ........................................................................4

45 C.F.R. § 147.130 (a)(iv)(A) ......................................................26

45 C.F.R. § 147.130 (a)(iv)(B) ......................................................26

45 C.F.R. § 147.140 ......................................................................26

76 Fed. Reg. 46621 (Aug. 3, 2011)...............................................15

76 Fed. Reg. 46623 (Aug. 3, 2011)...............................................15

77  Fed. Reg. 16501 (Mar. 21, 2012)............................................15

77  Fed. Reg. 16503 (Mar. 21, 2012)............................................15

77 Fed. Reg. 8725 (Feb. 15, 2012) ...............................................15

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Plaintiffs-Appellants request oral argument.  This case involves a challenge to federal regulations on religious freedom grounds.  It presents important questions that divided a motions panel of this Court and have divided other courts.  Oral argument will be helpful for this Court as it considers these issues.

## <u>JURISDICTIONAL STATEMENT</u>

This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) because this is an appeal of an interlocutory order of a United States District Court refusing to grant an injunction and pursuant to 42 U.S.C. § 2000bb–1(c) (Religious Freedom Restoration Act).

.

## STATEMENT OF ISSUES PRESENTED

1.        Whether the district court erred in denying a preliminary injunction to protect the rights under the Religious Freedom Restoration Act of the Plaintiffs, a business and the Catholic family that owns and operates it, against the HHS Mandate, which requires the Plaintiffs to provide drugs and services, including contraception and abortion-causing drugs, in violation of their religious beliefs.

## STATEMENT OF THE CASE

This case involves a challenge to the HHS Mandate, 45 C.F.R. § 147.130, which was promulgated pursuant to the Affordable Care Act ("ACA"), 42 U.S.C. § 300gg-13; Pub. L. 111-148; Pub. L. 111-152. The HHS Mandate took effect in August 2012. (45 C.F.R. § 147.130). The HHS Mandate requires that the Plaintiffs-Appellants cover contraception, abortion-causing contraception, and related counseling in their health care plan staring January 1, 2013, regardless of whether the Plaintiffs' religious beliefs prevent them from offering these drugs and services.

To protect their religious freedom, the Plaintiffs sued the Federal Government on October 8, 2012, Verif. Comp., R.1, and moved for a preliminary injunction two days later, Mot., R. 8. The district court denied a request to expedite consideration of the preliminary injunction motion, Order, R. 12, Page ID # 87, and held a hearing on the motion on December 17, 2012. The district court denied the request for a preliminary injunction on December 24, 2012, finding that the imposition of a multi-million dollar fine on the Plaintiffs for adhering to their religious beliefs did not substantially burden the exercise of their religion.

On December 26, the Plaintiffs appealed the denial of the preliminary injunction and moved this Court for an injunction pending appeal. On December 28, 2012, a divided motions panel denied the request. The panel

majority recognized that a divergence of opinions by other courts looking at these issues raised the possibility of success on the merits, but, noting that decisions seemed to be breaking about evenly, found that the Plaintiffs had not yet demonstrated a likelihood of success on the merits.  When that state of affairs changed because additional opinions from other courts were released enjoining the application of the HHS Mandate, the Plaintiffs moved the panel for reconsideration, but the motion was denied on December 31, 2012.[1]  On January 1, 2013, the Plaintiffs became subject to the HHS Mandate.

---

[1] In their motion the Plaintiffs also pointed out that although the panel opinion had relied on Justice Sotomayor's denial of a stay request directed to the Supreme Court, the standard governing such motions is much higher than the standard employed to evaluate a request for injunctive relief pending appeal in the Court of Appeals. (Emerg. Mot. For Reconsideration at p. 3-5.)

### STATEMENT OF FACTS

The Plaintiffs in this case are Autocam Corporation and Autocam Medical, LLC (collectively "Autocam") and the Kennedy family, which own and operate the business entities. The facts here are undisputed and are drawn from the Verified Complaint and sworn declarations. The Kennedy family owns the controlling interest in Autocam, and Plaintiff John Kennedy is the President and Chief Executive Officer. (Verif. Comp., R. 1 at ¶¶ 17-18, Page ID # 5.) He is responsible for setting all policies governing the conduct of Autocam, including its decisions regarding insurance. (*Id.*) The Plaintiffs are Roman Catholics that follow the teaching of the Catholic Church. (*Id.* at ¶ 31, Page ID # 7). The Plaintiffs "are called to live out the teachings of Christ in their daily activity." (*Id.* at ¶ 32, Page ID # 7.) Autocam is "the business form through which the individual Plaintiffs endeavor to live their vocation as Christians in the world." (*Id.* at ¶ 33, Page ID # 7.)

In accordance with the Plaintiffs' religious beliefs, Autocam has provided generous healthcare benefits and wages to its employees. (*Id.* at ¶¶ 38-40, Page ID # 8.) Specifically, Autocam covers 100% of its employees preventative care, including gynecological exams, pre-natal, and post-natal care. (*Id.* at 36, Page ID # 7-8.). Autocam also provides its employees up to $1,500 towards a health savings account that can be used to pay for any lawful service. (*Id.*; Kennedy Dec.,

R. 36-2 at ¶ 6, Page ID # 621.)  Autocam's employees are also well paid, with hourly workers earning $53,000 per year on average and salaried workers earning more than that.  (*Id.*)  The Plaintiffs have lived out their faith by providing employee health insurance through a self-insured plan that does not cover drugs or services such as contraception, abortion-causing contraception, and sterilization, which would violate the teaching of the Catholic Church.  (Verif. Comp., R. 1  at ¶¶ 38-39, Page ID # 8 .)

The Plaintiffs' religious beliefs prohibit covering, funding, or assisting others in obtaining contraception, abortion-causing drugs, and sterilization.  (*Id.* at ¶ 81, Page ID # 16.)  The Plaintiffs believe that cooperating with the provision of such drugs and services is a mortal sin.  (*Id.* at ¶ 82, Page ID # 16.)  The HHS Mandate requires the Plaintiffs to change their plan and cover drugs and services that violate their religion.  If the Plaintiffs continue their religious exercise, they will face a fine of approximately $19,000,000 per year.  (Supp. Kennedy Dec., R. 36-1 at ¶ 5, Page ID # 618; Kennedy Dec. Concerning Harm, R. 40-1 at ¶ 6, Page ID # 723.)  But to accept the HHS Mandate would violate the Plaintiffs religious beliefs: "Plaintiffs sincerely believe that if they comply with the mandate they will be guilty of material cooperation of evil, which constitutes a mortal sin that subjects them to eternal damnation. Put another way, the Plaintiffs sincerely believe that compliance with the Mandate will deprive them of their ability to share

eternal salvation." (Verif. Comp., R.1 at ¶ 83, Page ID # 16.) The Plaintiffs seek a preliminary injunction to remove the burden of having to choose between paying a ruinous fine or losing eternal salvation.

## SUMMARY OF ARGUMENT

The district court refused to grant a preliminary injunction against the HHS Mandate based on flawed legal conclusions. The Plaintiffs have shown a likelihood of success on the merits of their Religious Freedom Restoration Act ("RFRA") claim.[2] The RFRA requires a government regulation placing a substantial burden on the exercise of religion to meet strict scrutiny. The Plaintiffs believe that by covering contraception and abortion-causing drugs and related services they are committing a mortal sin, which subjects them to the prospect of eternal damnation. The Plaintiffs further believe in exercising their religion when interacting in the world at large, which includes conducting business. Thus, their religion requires them to operate their business along these lines and not to cover the objectionable drugs and services.

The HHS Mandate places substantial pressure on the Plaintiffs to violate their religious beliefs by imposing a $19 million fine for failure to comply. The district court ignored the draconian fine by focusing upon, and improperly

---

[2] Although the Plaintiffs continue to pursue their constitutional challenges below, they raise only the RFRA as grounds for a preliminary injunction here.

disregarding, the Plaintiffs' religious belief that providing coverage for mandated drugs and procedures is sinful.  In essence, the lower court concluded that the Plaintiffs should not be any more troubled by the Mandate than they would be if their employees use their own salary to buy mandated services.

In so doing, the district court engaged in a wholly illicit inquiry that the law forbids precisely because the civil state has no power to determine an individual's religious beliefs.  While the distinction may not seem important to a judge, it is all-important for the Plaintiffs because it is the difference between keeping the faith and risking eternal damnation.  The HHS Mandate, backed by fines of $19 million, imposes a substantial burden on Plaintiffs' religious freedom.

The HHS Mandate cannot survive the strict scrutiny applied by the RFRA because it is riddled with exceptions.  Most employers are not subject to the HHS Mandate, undermining any claim to the rule's importance.    The Federal Government admittedly lacks any proof of an interest in applying the HHS Mandate to *these Plaintiffs*.  Moreover, the Plaintiffs' employees receive generous benefits and have sufficient funds to pay for the objectionable drugs and services on their own without direct coverage by the Plaintiffs.  Furthermore, the Federal Government cannot show that the HHS Mandate is the least restrictive means because it faces no injury from providing the Plaintiffs with a religious accommodation and the Plaintiffs' alternative suggestions can be just as effective

at advancing the purported interest. Thus, the Plaintiffs have established a likelihood of success on the merits.

The Plaintiffs have also met the other requirements for a preliminary injunction. The violation of their rights under the RFRA constitutes irreparable harm. The Federal Government will not be injured if enjoined here because the HHS Mandate is subject to many exceptions and has already been enjoined in the majority of other cases. Finally, the public interest is served by protecting the Plaintiffs' religious freedom.

## **ARGUMENT**

### I.    **Standard of Review**

Although the Court "generally review[s] a district court's denial of a request for a preliminary injunction for abuse of discretion," it reviews "the district court's legal conclusions de novo." *Certified Restoration Dry Cleaning v. Tenke Corp.*, 511 F. 3d 535, 540-41 (6th Cir. 2007). "The district court's determination of whether the movant is likely to succeed on the merits is a question of law and is accordingly reviewed de novo." *Id.* at 541. A district court abuses its discretion when it commits a legal error. *McPherson v. Michigan High School Athletic Ass'n*, 119 F. 3d 453, 459 (6th Cir. 1997). The facts are not in dispute, and this case presents only questions of law.

## II.    The District Court Erred in Refusing to Grant a Preliminary Injunction.

### A.    *Standard for granting a preliminary injunction*

In determining whether to grant an injunction, courts consider whether: (1) the party seeking the injunction has shown a likelihood of success in prevailing on merits; (2) the party seeking the injunction will suffer irreparable harm if the injunction is not issued; (3) the threatened injury to the party seeking the injunction outweighs any injury the proposed injunction may cause the party opposing the injunction; and (4) the injunction would serve, not harm, the public interest. *N.E. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). These four factors are "interrelated considerations that must be balanced together," not independent requirements. *Id.* at 1009. The stronger the showing on one factor, the less of a showing required on another. *Id*. A sufficient degree of success is shown if "the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc*., 119 F.3d 393, 402 (6th Cir. 1997). The Plaintiffs made a sufficient showing under each factor, and the district court erroneously refused to grant a preliminary injunction.

### B.    *The Plaintiffs have established a likelihood of success under the Religious Freedom Restoration Act.*

For-profit plaintiffs have sought preliminary relief from the HHS Mandate in 14 other cases.  In 11 of those, courts awarded preliminary relief against enforcement of the HHS Mandate.  *See Annex Med., Inc. v. Sebelius*, No. 13-1118 (8th Cir. Feb. 1, 2013) (granting injunction pending appeal); *Grote v. Sebelius*, No. 13-1077, 2013 WL 362725 (7th Cir. Jan. 30, 2013) (same); *Korte v. Sebelius*, No. 12-3841, 2012 WL 6757353 (7th Cir. Dec. 28, 2012) (same); *O'Brien v. U.S. Dep't of Health & Human Servs*., No. 12-3357 (8th Cir. Nov. 28, 2012); *Triune Health Group, Inc. v. U.S. Dep't of Health & Human Servs*., No. 12-cv-6756 (N.D. Ill. Jan. 3, 2013) (granting preliminary injunction*); Am. Pulverizer Co. v. U.S. Dep't of Health & Human Servs.*, No. 12-cv-3459, 2012 WL 6951316 (W.D. Mo. Dec. 20, 2012) (same); *Tyndale House Publishers, Inc. v. Sebelius*, No. 12-cv-1635, 2012 WL 5817323 (D.D.C. Nov. 16, 2012) (same); *Legatus v. Sebelius*, No. 12-cv-12061, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012) (same); *Newland v. Sebelius*, No. 1:12-cv-1123, 2012 WL 3069154 (D. Colo. July 27, 2012) (same); *Sharpe Holdings, Inc. v. U.S. Dep't of Health and Human Servs*., No. 2:12-cv-92 (E.D. Mo. Dec. 31, 2012) (granting temporary restraining order); *Monaghan v. Sebelius*, No. 12-cv-15488, 2012 WL 6738476 (E.D. Mich. Dec. 30, 2012) (same); but see *Hobby Lobby v. Sebelius,* No. 12-6294 (10th Cir. Dec. 20, 2012); *Conestoga Wood Specialties Corp. v. Sebelius*, No. 12-cv-6744, 2013 WL 140110 (E.D. Pa. Jan. 11, 2013) (denying relief).  For the reasons detailed below,

this Court should stand with the majority of federal judges considering the issue and protect the Plaintiffs' religious freedom until a decision is made on the merits.

1.    The Religious Freedom Restoration Act protects the Plaintiffs' exercise of religion in operating their business.

The RFRA prohibits the Federal Government from burdening religious exercise "even if the burden results from a rule of general applicability," except when the Government can "demonstrate[] that application of the burden to the person--(1) [furthers] a compelling government interest; and (2) is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000bb-1. The RFRA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). This includes not merely worship but actions in accordance with one's faith. *Id.* Accordingly, the Plaintiffs' operation of their health insurance plans according to their religious beliefs is the "exercise of religion" under the RFRA as a matter of law.

2.    The HHS Mandate burdens the Plaintiffs' exercise of religion.

The Plaintiffs exercise their religion by providing health insurance consistent with their religious beliefs. The Kennedy family owns the controlling interest in Autocam, and Plaintiff John Kennedy is the President and Chief Executive Officer. Verif. Comp., R. 1 at ¶¶ 17-22, Page ID # 5.) He is responsible for setting all policies governing the conduct of Autocam, including its decisions regarding insurance. (*Id.*)

13

The Plaintiffs' religious practice requires them to live out the teachings of Christ in their daily activity and run their business in a manner that does not violate the principles of their faith. (*Id*. at ¶¶ 32, 45.) The Plaintiffs live out their faith partly in the way they treat their employees. On the one hand, they provide generous salaries and benefits, including employee health insurance through a plan. (Verif. Comp., R.1 at ¶ 36, Page ID # 7-8) On the other hand, the benefits package excludes coverage for contraception, abortion-causing contraception, and sterilization because Plaintiffs' religious practice forbids covering, funding, or assisting others in obtaining these drugs and procedures. (Verif. Comp. RE #1 at ¶¶ 38-40, 81, Page ID # 8, 16) Cooperating with the provision of such services is a mortal sin, which imposes a tremendous burden on Plaintiffs' souls. (*Id.* at ¶ 82, Page ID # 82.) Indeed, Autocam is self-insured and must pay for the mandated drugs directly. (*Id.* at ¶ 40, Page ID # 8.) Requiring Plaintiffs to provide such drugs and services—or simply requiring them to provide *coverage* for such drugs and services—either directly or through a company under their ownership and control, severely burdens their religious practice.

If the Plaintiffs continue their religious exercise, they will face substantial per employee fines for their religious exercise under 26 U.S.C. § 4980D— approximately nineteen million dollars ($19,000,000), per year. (Supp. Kennedy Dec., R. 36-1 at ¶ 5, Page ID # 618; Kennedy Dec. Concerning Harm, R. 40-1 at

¶ 6, Page ID # 723.)  A fine is a quintessential burden.  S*ee Sherbert v. Verner,* 374 U.S. 398, 403-04 (1963).   And placing "substantial pressure on an adherent to modify his behavior and to violate his beliefs" is a substantial burden.  *Thomas v. Review Bd. Of Ind. Empt' Sec Div.,* 450 U.S. 707, 719 (1981).   The Federal Government's position is clear: Autocam either covers the drugs that the company, and its owners and operators, object to on religious grounds, or it is subject to a severe penalty.  This is a substantial burden that triggers the RFRA.  *See*, *e.g*., *Wisconsin v. Yoder*, 406 U.S. 205, 208, 218 (1972) (finding $5 fine substantially burdened religious exercise).[3]

The court below concluded otherwise by failing to focus its attention on the burden the HHS Mandate placed on the Plaintiffs' free exercise of religion as required by the RFRA.  First, the Court totally disregarded the burden the HHS Mandate placed on the Plaintiffs' free exercise of religion on the grounds that the monetary costs of compliance only amounted to about $100,000.  (Op., R. 42 at 10, Page ID # 748).   In so doing, the court below failed to engage in the inquiry

---

[3] The Federal Government's effort to deny that the HHS Mandate burdens the religious beliefs and practices of employers is defied by its own actions.  It was precisely because the Federal Government recognized this burden when it granted a wholesale exemption from the HHS Mandate to a class of nonprofit employers, 76 Fed. Reg. 46621, 46623 (Aug. 3, 2011); 77 Fed. Reg. 8725 (Feb. 15, 2012), and it is for this reason that the Federal Government is also considering ways to accommodate the religious objections of even more nonprofit employers,  77 Fed. Reg. 16501, 16503 (Mar. 21, 2012), and has recently announced changes.  *See als*o *Wheaton College v. Sebelius*, --- F.3d ----, 2012 WL 6652505 (D.C. Cir. Dec. 18, 2012).

required by the RFRA, which is focused on the burden placed on the free exercise of religion not the out-of-pocket costs incurred by a person forced to violate religious beliefs.

As the Plaintiffs took pains to point out, their objection is <u>not</u> based on the out-of-pocket costs of compliance, which are relatively minimal.  Their objection is based upon the religious consequences of compliance, which are drastic because they directly impact the Plaintiffs' ability to stand before their God as upright and worthy servants of their Lord.  If this were just about money, the Plaintiffs would not be before the Court.  The court below erred when it disregarded the burden on the Plaintiffs' free exercise of religion and reasoned that the HHS Mandate did not impose a substantial burden on the Plaintiffs' free exercise of religion because the financial burden the Plaintiffs would incur when violating their religious beliefs were not substantial.  This is not the inquiry required by the RFRA.

The court below made its second fundamental error when it scrutinized, and dismissed as insubstantial, the Plaintiffs' religious objection.  Here, the court noted that prior to the HHS Mandate, the Plaintiffs' employees could use their own funds (from their salaries or health savings accounts), to pay for the drugs and procedures to which the Plaintiffs object whereas the HHS Mandate forces the Plaintiffs to provide coverage for the objectionable drugs and procedures directly.  (Op., R. 42 at 10, Page ID #748.)  In the Court's view the pre-mandate and post-mandate

situation "differs little in substance," (Op., R. 42 at 10, Page ID # 748), and consequently the court below concluded that the "incremental difference between providing the benefit directly, rather than indirectly, is unlikely to qualify as a substantial burden…."  (*Id.* at 11, Page ID # 749.)

Here the court below engaged in a wholly illicit inquiry that is foreclosed by both the RFRA and the First Amendment.  It failed to focus its substantial burden analysis on the substance (or weight) of the legal penalties that would follow if the Plaintiffs continue their exercise of religion (i.e., $19 million in fines).  Instead, the Court focused on, and weighed by its measure, the substance of the Plaintiffs' religious objection, and disregarded the Plaintiffs' religious belief on the grounds that the objection was insubstantial (in the court's view).

In so doing the court below committed an egregious error.  Courts cannot be "arbiters of scriptural interpretation."  *Thomas*, 450 U.S. at 716.  The legal question turns on whether the penalty heaped for religious practice is a substantial burden.  *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006); *see also Thomas,* 450 U.S. at 718; *Sherbert,* 374 U.S. at 403-404.  The legal question does not turn on whether the court believes a religious objection is substantial.  The Plaintiffs have detailed their religious objections, and these are entitled to protection under the RFRA, even where, as here, the court finds the line drawn by the Plaintiffs' religious tradition insubstantial (in its

17

estimation).  Both the RFRA and the First Amendment prevent the state from determining the "substance" and the "substantiality" of the Plaintiffs' religious beliefs.

### *Autocam's owners and operators are protected by the RFRA*

The Kennedy family owns the controlling interest in Autocam.  (Verif. Comp., R. 1. at ¶¶ 18-23, Page ID # 5-7.)  Plaintiff John Kennedy is also the President and Chief Executive Officer of Autocam.  (*Id.* at ¶ 17, Page ID # 5.)  He is responsible for setting all policies governing the conduct of Autocam, including its decisions regarding insurance.  (*Id.*)  The HHS Mandate will require him, as not just an owner but the operator of the company, to engage in a practice repugnant to his religious beliefs.  Moreover, he acts for the Kennedy family when he operates the business that they own. Requiring the Kennedy's to violate their religious beliefs when they operate the business that they own is a substantial burden under the RFRA.  The district court, however, treated this burden as too attenuated because it was carried out in a commercial setting and through the corporate form.  (Op, R. 42 at 12, Page ID # 750).  This cannot be the case.

The Plaintiffs "are called to live out the teachings of Christ in their daily activity."  (Verif. Compl., R.1 at ¶ 32, Page ID # 7.)  Autocam's for-profit status is merely "the business form through which the individual Plaintiffs endeavor to live their vocation as Christians in the world."  (*Id.* at ¶ 33, Page ID # 7.)  Operating in

the world as a business is fully consistent with and a part of its owners' religious practice. (*Id.*) Engaging in commerce is not mutually exclusive with the exercise of religion. The Supreme Court has allowed commercial proprietors to assert religious exercise claims. *See United States v. Lee*, 455 U.S. 252, 256-57 (1982) (Amish *employer* could object on religious liberty grounds to social security taxes); *Braunfield v. Brown*, 366 U.S. 5699, 605 (1961) (Jewish *merchants* could challenge Sunday closing law that made "the practice of their religious beliefs more expensive"). In both of those cases, the government action survived the challenge precisely because the Court concluded that the laws in question were narrowly tailored—the Supreme Court still applied strict scrutiny and permitted the challenge to go forward. *Lee*, 455 U.S. at 257-60; *Braunfield*, 366 U.S. at 607-609.

The district court's analysis treated the burden as falling only on the company and not the individual plaintiffs. Although Autocam itself has rights, which are discussed below, a burden on the company in this context is certainly a burden on its proprietors. If a government regulation forced Orthodox Jewish deli owners to serve non-kosher food against the dictates of their religion, this would certainly violate their rights and deny them the ability to make a public witness about the importance of keeping kosher. Their rights would be violated even if they operated their deli for a profit and even if they operated it as a corporation.

19

The district court also noted that Autocam's owners and operators enjoyed the benefits of the corporate form.   There is no factual basis for the notion that the Kennedys forfeited their constitutional rights when they chose to conduct business through business entities authorized by state law. This is as it should be because any effort to make the Kennedy's surrender their fundamental rights in order to use the corporate form would itself be unconstitutional.  *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996) ("our modern 'unconstitutional conditions' doctrine holds that the government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected [First Amendment rights] even if he has no entitlement to that benefit"); *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) ("Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit conferred by the government . . . .").   Here, the Kennedy family seeks to live out their religious faith, in part, in the way the conduct the business they own and operate.  To impose a ruinous fine for doing so substantially burdens their religious exercise and triggers the RFRA.

### Autocam itself is protected by the RFRA.

Because Autocam itself exercises religion under the RFRA, the HHS Mandate also imposes a substantial burden upon its free exercise of religion.  The district court raised, but then avoided, the question of whether corporations have

20

rights under the RFRA. That was wise, and this Court need not decide the issue at this time because it is indisputable that Autocam's owners and operators can exercise religion although they engage and business through a corporate form, and Autocam can raise their rights. *Storman's, Inc. v. Selecky,* 586 F.3d 1109, 1120-21 (9th Cir. 2009) ("a corporation has standing to assert the free exercise rights of its owners"); *EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 619-20 (9th Cir. 1988) (company "has standing to assert [its owners'] Free Exercise rights"); *NAACP v. Button*, 371 U.S. 415, 428-430 (1963) (corporations can assert rights of others). But it bears noting that it that Autocam does have rights under the RFRA by the plain meaning of the statute.

The RFRA protects "a person's exercise of religion." 42 U.S.C. § 2000bb-1. Under the basic rules of construction: "In determining the meaning of any Act of Congress, . . . . the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. Unless the plain language excludes corporations or inclusion of corporations would be inconsistent with the statutory scheme, laws covering persons are construed to cover corporations. *See Bennett v. MIS Corp*., 607 F.3d 1076, 1085 (6th Cir. 2010) (applying 1 U.S.C. § 1).

Reading the definition of person to cover corporations would be consistent with the statutory scheme because corporations already benefit from other civil

rights provisions and from the First Amendment rights RFRA was designed to restore.[4] *See, e.g., Thinket Ink. v. Sun Microsystems, Inc.*, 368 F. 3d 1053, 1058-60 (9th Cir. 2004) (corporations may bring Section 1981 actions for racial discrimination); *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 867 (9th Cir. 1984) (corporations may bring Section 1983 actions and qualify as "persons" under the 14th Amendment, the equal protection clause, and the due process clause). And corporations qualify as "persons" under the 14th Amendment, the equal protection clause, and the due process clause. *Id*. Corporations have brought free exercise cases before. *See, e.g., Church of the Lukumi Babalu Aye, **Inc**. v. City of Hialeah*, 508 U.S. 520, 525 (1993) (claim involving a "not-for-profit corporation organized under Florida law"); *Okleveuha Native American Church of Hawaii, **Inc**. v. Holder*, 676 F.3d 829 (9th Cir. 2012); *Mirdrash Sephardi, **Inc**. v. Town of Surfside*, 367 F.3d 1214 (11th Cir. 2004); *see also* Durham & Smith, 1 Religious Organizations and the Law § 3:44 (2012) (explaining reasons religious organizations use the corporate form).

The Supreme Court has famously recognized that free-speech protection extends directly to corporations. *Citizens United v. Fed Election Comm'n,* 558 U.S. 310; 130 S.Ct. 876, 9000 (2010) ("The Court has . . . rejecting the argument

---

[4] As the Federal Government appropriately recognized, although Autocam Medical is a Limited Liability Company, the same rules apply to LLCs as corporations. (Resp., R. 17 at 15 n. 11, Page ID # 191). Accordingly, the Plaintiffs will simply use the phrase corporations throughout this brief.

that political speech of corporations or other associations should be treated differently under the First Amendment simply because such associations are not 'natural persons.'").  And the First Amendment's various protections are cognate rights such that free speech and free exercise cannot be separated.  *See Thomas v. Collins*, 323 U.S. 516, 530 (1945) (First Amendment rights "though not identical, are inseparable. They are cognate rights.").

The undisputed factual record attests that Autocam, through the actions of its owners and operators, has been exercising religion.  (Verif. Comp., R.1 at ¶¶ 31-35, Page ID # 7)  Even while providing otherwise generous healthcare benefits and wages, Autocam refused to cover contraception and abortion-causing products that violated its religious beliefs and the religious beliefs under which it was operated. (*Id.*  at ¶¶ 38-40, Page ID # 8.)  The only explanation for why a company would provide lavish benefits, while arranging to exclude a particular category based on a moral objection, is that the company is exercising religion.  A company can exercise religion and express its religious views in the same way as it can hold political beliefs and express political positions—through the actions of its human agents and operators.

Michigan law permits corporations to engage in any lawful purpose and does not treat the exercise of religion as a prohibited practice.  MCL 450.1251 (corporations); MCL 450.4201 (LLCs).  The undisputed facts show that Autocam

practices religion precisely because its owners operate through that business form. And the RFRA protects a corporation's exercise of religion. The HHS Mandate must, therefore, be tested under the RFRA's strict scrutiny.[5]

### 3. The exception-riddled HHS Mandate is not justified by a compelling interest

To show a compelling interest, the Federal Government must "specifically identify an 'actual problem' in need of solving," and showing that substantially burdening Plaintiffs' free exercise of religion is "actually necessary to the solution." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2738 (2011). The Federal Government was required to go beyond "broadly formulated interests" and instead specify "the asserted harm of granting specific exemptions to particular religious claimants." *Gonzales*, 546 U.S., 431. This is the "focused inquiry required by the RFRA and the compelling interest test." *Id*. at 432; *see also Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622, 664 (1994) (government "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way").

---

[5] The district court feared that more litigation would result from subjecting burdens like the HHS Mandate to the RFRA. (Op, R. 42 at 12-13, Page ID # 750-51) The Federal Government has raised a parade of horribles before, and is likely to do so again, claiming the evils resulting from allowing a corporation to challenge a regulation on religious grounds. But the Supreme Court has rejected such slippery slope arguments, *Gonzales*, 546 U.S. at 436, and the sky has not fallen though RFRA has been in force since 1993.

The Federal Government bears the burden of proof, and "ambiguous proof will not suffice." *Brown*, 131 S.Ct. at 2739.  As such, the Federal Government is required to offer actual evidence.  *See United States v. Playboy Ent'mt Group, Inc*, 529 U.S. 803, 821 (2000) (nothing that, "[w]ithout some sort of field survey, it is impossible to know how widespread the problem in fact is").  Specifically, this requires "evidence that granting the requested religious accommodations would seriously compromise its ability to administer this program."  *Gonzales*, 546 U.S. at 435.  And the evidence must show a compelling interest in applying the law to "the particular claimant whose sincere exercise of religion is being substantially burdened."  *Id*. at 430-31.  The Government has failed to carry this burden for two key reasons.

First, the Federal Government cannot show that its scheme is undermined by accommodating the Plaintiffs when it has accommodated so many others.  The HHS Mandate, and the ACA which applies it, are subject to numerous exceptions that cover millions of people, including:

•   Individual members of a "recognized religious sect or division" that conscientiously object to acceptance of public or private insurance funds in their totality, such as certain members of the Islamic faith or the Amish are exempt.  26 U.S.C. § 5000A(d)(2)(A)(i) and (ii).  But individuals and companies whose religious beliefs allow—or encourage—them to provide health insurance

are not exempt from the HHS Mandate. Thus, it is essentially the basis of the religious objection and the tenants of the religion that determines whether a religious exemption applies.

- Employers with fewer than 50 full-time employees are exempt. 26 U.S.C. § 4980H(c)(2)(B)(i). But employers with more than 50 full-time employees must provide federal government-approved health insurance, which is subject to the HHS Mandate.

- Non-profit employers who qualify under the exemption of a "religious employer" are exempt. 45 C.F.R. § 147.130 (a)(iv)(A) and (B). But employers who have chosen to organize their company on a for-profit basis are subject to the HHS Mandate.

- Employers with health care plans that are considered to be "grandfathered," which, amongst meeting other criteria, have been in place and remain unchanged since March 23, 2010, are exempt. 42 U.S.C. § 18011(a)(2); 26 C.F.R. § 54.9815-1251T; 29 C.F.R. § 2590.715-1251; 45 C.F.R. § 147.140. But companies such as Autocam that have made plan changes after that date are subject to the HHS Mandate.

By the White House's own numbers, the 50-employee rule essentially exempts 96% of all employers in the United States, which covers about 34 million

workers.[6]    The exemption for grandfathered plans is even more significant. Indeed, the Federal Government initially "exempted over 190 million health plan participants and beneficiaries" from the HHS Mandate. *Newland*, s*upra*, at *7. This scheme of exceptions "completely undermines any compelling interest" behind the HHS Mandate. *Newland*, *supra*, at *7.

Second, the Federal Government has no proof that Autocam's female employees and the beneficiaries of its benefits policy have a healthcare problem that needs addressing, let alone a compelling problem.  Indeed, the evidence says the exact opposite—Autocam has great preventative care: "Autocam's program covers one hundred percent (100%) of the cost of employees' preventive care, including health maintenance exams, including X-rays, scans, gynecological exams, and screenings, pre-natal, post-natal, and well-baby care." (Verif. Comp., R.1 at ¶ 36, Page ID # 7.)  Autocam also provides its employees up to $1,500 that can be used to pay for any lawful service. (*Id*.; Kennedy Dec., R. 36-2 at ¶ 6, Page ID # 621.)  Autocam's employees are also well paid, with hourly workers earning $53,000 per year on average and salaried workers earning more than that. (*Id.*) The Federal Government's arguments below missed the mark because they did not address the situation presented by Autocam: a company that provides generous

---

[6] The Affordable Care Act Increases Choice and Saving Money for Small Businesses at p. 1:
http://www.whitehouse.gov/files/documents/health_reform_for_small_businesses.pdf

preventative benefits and $1,500 in dollars that employees can spend; the Federal Government did not even try to address why applying the HHS Mandate to these Plaintiffs is necessary to achieve its goal. Even if the Federal Government can argue it has a compelling interest in coercing some employers to provide contraception, abortion-causing drugs, and related services at no cost to the employee, it does not have a compelling interest in requiring Autocam to do so.

### 4. The HHS Mandate is not the least restrictive means.

The fundamental question here is whether Autocam can be exempted without undermining the Federal Government's interest. *See*, *e.g.*, *United States v. Wilgus*, 638 F.3d 1274, 1289-95 (10th Cir. 2011). The Supreme Court has rejected the argument that making an exemption for one group means you have to make exceptions for others as the "classic rejoinder of bureaucrats." *Gonzales*, 546 U.S. at 436. Under the RFRA, the Federal Government is required to show why exceptions cannot work under a compelling interest test. *Id.* And given that Autocam provided generous benefits, complete coverage of preventative care, and employer-funded health savings accounts, the Federal Government cannot show why an exception for these Plaintiffs would not work.

The Federal Government has also failed to demonstrate that the Plaintiffs' alternative suggestions fail to achieve the goals of the HHS Mandate. "When a plausible, less restrictive alternative is offered . . . it is the Government's obligation

28

to prove that the alternative will be ineffective to achieve its goals." *Playboy Entm't Group*, 529 U.S. 803, 816 (2000).   In the trial court, the Plaintiffs highlighted six possible schemes to more widely distribute contraception and reduce its cost at least one of which imposes no additional cost on the Federal Government, including: 1) providing free birth control by creation of a government-sponsored contraception insurance plan, 2) providing free birth control by direct government compensation for contraception and sterilization providers, 3) providing free birth control by a mandate on the contraception manufacturing industry itself, 4) making birth control cheaper through tax credits or deductions, 5) offering grants to state governments and community health centers, 6.) raising taxes to fund such programs rather than requiring employers to directly provide drugs that at violate their beliefs.   The Federal Government failed to respond with specifics such as numbers, costs, or anything resembling proof that the Plaintiffs' suggestions would hurt public health or women's equality.  (Resp. Br., R. 17 at 26-28, Page ID # 202-204) Thus, the Federal Government cannot survive the RFRA's strict scrutiny.

C.    ***The violation of the Plaintiffs' religious freedom constitutes irreparable harm.***

    1.    <u>By demonstrating an RFRA violation, the Plaintiffs showed irreparable harm.</u>

As detailed above, the Plaintiffs rights under the RFRA are being violated. This is irreparable harm. *See, e.g., Jolly v. Coughlin,* 76 F.3d 468, 482 (2d Cir. 1996) ("Courts have persuasively found that irreparable harm accompanies a substantial burden on an individual's rights to the free exercise of religion under RFRA."); *see also Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir. 2003) (violation of constitutional rights for even a minimal amount of time constitutes irreparable harm). The Plaintiffs have demonstrated that "[they] are likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22, (2008) (quotation omitted). And the district court should have issued an injunction on this basis alone.

    2.    <u>The district court's other conclusions on irreparable harm are baseless.</u>

The district court gave four legally erroneous reasons for finding a lack of irreparable harm. First, the district court questioned the timing of the Plaintiff's complaint in relation to the January 1, 2013, compliance deadline. (Op., R. 42 at 15, Page ID # 753). This point is irrelevant due to the fact that the HHS Mandate is ongoing, notwithstanding the January 1, 2013, deadline.

More importantly, the argument has been rejected in similar cases and does not square with the facts in this case. The Plaintiffs filed their suit on October 8, 2012, which was the soonest practical time to file given that the Plaintiffs lacked any reasonable grounds for a decision to cut coverage due to the lack of information about the coverage alternatives available to workers. (Kennedy Dec., R. 36-2 at ¶¶ 4-5, Page ID # 620-21.) Indeed, Plaintiffs knew that if they filed earlier, the Federal Government would challenge the motion on ripeness grounds, even though, as noted by the court in *Tyndale*, the argument for delay in filing "is disingenuous." *Tyndale*, Slip. Op. at 36, n.18. In other cases challenging this same HHS Mandate, the Federal Government claimed that irreparable harm did not exist until after the HHS Mandate had forced a change in coverage. *Id.*

It is not surprising then that other cases have been brought after the Plaintiffs filed their lawsuit.[7] But it does seem somewhat surprising that the court below refused to hear the Plaintiffs' motion in October, then failed to act until December 24, 2012, regarding a request for relief from a requirement that took effect on January 1, 2013, necessitating a flurry of motions before this Court that had to be resolved on extremely short notice in a holiday season valued by all. The Plaintiffs did not engage in due delay.

---

[7] A running list of these cases and their date of filing is available at:
http://www.becketfund.org/hhsinformationcentral/

Second, the court below found that the Plaintiffs have an additional option: dropping all group health coverage for their employees. (Op., R. 42 at 16, Page ID # 754.) But here again, the court missed the heart of the matter: the Plaintiffs provide generous health benefits *because* of their religious beliefs which make the Plaintiffs extremely reluctant to eliminate coverage because they value the individual dignity of their employees. (Kennedy Dec. Concerning Harm, R. 40-1 ¶¶ 8-10, Page ID # 723-24.) Moreover, such a remedy would also still subject the Plaintiffs to significant penalties. 26 U.S.C. § 4980H.

Third, the district court suggested that the case "really hinges on financial impact." (Op., R. 42 at 16, Page ID # 754.) But that suggestion is insupportable. Although the ruinous penalty imposed is financial in nature, this injunction is not about money for the reasons explained above.

These stated grounds for the court's denial of preliminary relief simply go to show that it failed to grasp the essence of the Plaintiffs' claim. It is true that the Plaintiffs would save about five million, six-hundred thousand dollars ($5,600,000), by cutting their employees benefits, as the court suggested. And it is true that the out-of-pocket costs of compliance are indeed fairly marginal. But the court below was blind to the larger truth that the Plaintiffs' believe both courses of action are gravely sinful and violate the law of God. The court was apparently unable to see that the Plaintiffs are trying to conduct their business consistent with

32

the teachings of their faith—they are believers at home, in church, and at work. For this very reason, the options the court below found so easy to say ("just cut employee benefits" or "pay the $100,000"), the Plaintiffs find terribly hard to do.[8]

Unfortunately, the court below found these religious objections insubstantial (in its estimation). In doing so the district court failed to properly apply the RFRA and engaged in an inquiry forbidden by the First Amendment. Neither the RFRA nor the First Amendment allow a civil court to disregard religious objections it finds insubstantial and tell the believer what the dispute "really hinges on." And the manifest legal error that arose when the court below did so is starkly illustrated where, as here, the evidence in the record conclusively demonstrates that what the court below thought the case "really hinges on" is a trivial factor to the Plaintiffs requesting relief.

Finally, the district court expressed concern about the ultimate impact of a preliminary injunction if later reversed. (Op., R. 42 at 17-20, Page ID # 755-58.) The Plaintiffs believe the court below is mistaken.[9] But the important point for the purpose of this present appeal is that the court's speculative concern is obviated by

---

[8] The Plaintiffs are now being forced to comply with the mandate because the fines will destroy their business and they are unwilling to subject their employees to risk of financial ruin. They will be forced to revisit that decision if they cannot secure relief on appeal.

[9] The Plaintiffs' reasoning on this point is detailed in Plaintiffs' Supplemental Brief On Harm, R. 40, Page ID # 710-720.

33

the facts of the case, which show that the injunction would spare the Plaintiffs a ruinous fine and leave them to challenge only a draconian and unjust one.

More specifically, Section 4980D contains certain limits on the penalty imposed for failing to comply with the HHS Mandate based on "reasonable cause," And the defendants have conceded award of a preliminary injunction would constitute reasonable cause for noncompliance.[10] The Plaintiffs will fight that unjust fine when the time comes rather than engage in behavior they believe to be gravely wrong.  But the root point is that the court's concern was, and remains, irrelevant to the facts of this case and therefore provides no basis to deny the relief requested.   If anything, the facts show that the equities favor providing the preliminary relief for the reasons stated simply by the judge who dissented from the denial of the Plaintiffs' emergency motion filed on December 26, 2012.

---

[10] The Federal Government has stated on the record that failure to comply with the HHS Mandate in reliance on an injunction would constitute reasonable cause and thus provide for a reduction in the penalty (Gov't Supp. Br., R. 41 at 2-4, Page ID # 727-29), but also stated that the failure to comply with the HHS Mandate based on religious objects without the cover an injunction would not constitute reasonable cause and would thus subject the Plaintiffs to a tremendously larger penalty (Tr., R. #38 at 63-64, Page ID # 686-87).  In other words, the Federal Government has made it clear that if a preliminary injunction is issued, regardless of how the law is later shaped on this issue, the Plaintiffs will be protected.

**D.**    ***The Federal Government will not be injured by an injunction because the HHS Mandate is already subject to exceptions and has been enjoined in most courts.***

To the extent there is any generalized public interest in favor of enforcing the HHS Mandate, the Federal Government's creation of numerous exceptions undermines any claimed public interest. And the HHS Mandate has already been enjoined in most other cases.[11] Simply put, the Federal Government will not be harmed by having one more company temporarily exempted from the HHS Mandate pending a resolution on the merits.

**E.**    ***The public interest would be served by protecting the Plaintiffs' religious freedom.***

The only persons who risk harm here are the Plaintiffs. The Plaintiffs' employees will suffer no harm if deprived of the "benefits" of the HHS Mandate as they will continue to receive $1,500, which is their own money and can be used to pay for the drugs and services the HHS Mandate would force the Plaintiffs to cover themselves. Furthermore, the district court's suggested resolution of the case— that the Plaintiffs simply cancel health insurance for their employees—would itself be a tragedy that injures the public interest by cancelling important benefits to

---

[11] The court below also raised the Anti-Injunction Act as another potential obstacle. (Op. , R. 42 at 18, Page ID # 756,) But the act does not apply to the HHS Mandate for reasons explained at length in the record below, Sup. Br. On AIA, R. 36, Page ID # 605-15, a point the federal government conceded on the record, Tr., R. 38 at 63, Page ID # 686, which doubtless explains why the court did not rest its decision on this ground.

hundreds of people.  (*See* Op., RE #42 at 20-21, Page ID # 758-59.)  The public interest is served by preventing an injury to the rights of the plaintiffs.  *See Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  And this interest is particularly served by protecting the Plaintiffs' religious liberty.

## <u>CONCLUSION</u>

For these reasons, the district court's decision denying a preliminary injunction should be denied and the case remanded with instructions to issue a preliminary injunction.

Respectfully submitted,

Dated: February 11, 2013

*/s/ Jason C. Miller*
Patrick T. Gillen (P47456)
Fidelis Center for Law and Policy
CatholicVote Legal Defense Fund
Attorney for Plaintiffs
1025 Commons Circle
Naples, FL  34119
(734) 355-4728
ptgillen@avemarialaw.edu

*/s/ Jason C. Miller*
Jason C. Miller (P76236)
MILLER JOHNSON
250 Monroe Avenue N.W. Ste 800
PO Box 306
Grand Rapids, Michigan  49501
(616) 831-1700
millerj@millerjohnson.com

Peter Breen
Thomas More Society
Attorneys for Plaintiffs
29 South LaSalle St. – Suite 440
Chicago, IL 60603
Tel. 312-782-1680
pbreen@thomasmoresociety.org

*Attorneys for Plaintiffs-Appellants*

36

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to FED. R. APP. P. 32(a)(7)(c) and 6 CIR. R. 32(a), the undersigned hereby certifies that this brief complies with the type-volume limitation. The brief was prepared using proportionally spaced font, with serifs, to wit: Times New Roman in 14-point type. This brief contains 7961 words, excluding the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, certificate of service, this certificate of compliance and the addenda. The word count was determined using Microsoft Office Word 2010 for Windows. All footnotes were included in the word count.

<u>/s/ Jason C. Miller</u>

Dated: February 11, 2013

## __CERTIFICATE OF SERVICE__

I hereby certify that on February 11, 2013 I served a true and correct copy of the foregoing on the following:

>Abby C. Wright
>Mark B. Stern
>Alisa B. Klein.
>U.S. Department of Justice
>Counsel for Defendants

MILLER JOHNSON
Counsel for Plaintiffs

Dated: February 11, 2013

>/s/ *Jason C. Miller*
>Jason C. Miller (P76236)
>250 Monroe Avenue, N.W., Suite 800
>PO Box 306
>Grand Rapids, Michigan  49501-0306
>Telephone:  (616) 831-1700

## <u>DESIGNATION OF RELEVENT DISTRICT COURT DOCUMENTS</u>

| Document Name | Record # | Page ID # range |
|---|---|---|
| Verified Complaint | 1 | 1-31 |
| Motion for Preliminary Injunction | 8 | 49-52 |
| Order on Expedited Consideration | 12 | 87-89 |
| Response to Motion | 17 | 166-214 |
| Supplemental Br. on AIA | 36 | 605-615 |
| Supplemental Kennedy Dec. | 36-1 | 616-618 |
| Kennedy Dec. | 36-2 | 619-622 |
| Hearing Transcript | 38 | 624-698 |
| Plaintiffs' Br. on Harm | 40 | 710-720 |
| Kennedy Dec. Concerning Harm | 40-1 | 721-725 |
| Gov't Br. on Harm | 41 | 726-731 |
| Opinion Denying Injunction | 42 | 739-759 |